## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

**James T. Williamson and IP Technologies Holdings, Inc.,**

        *Plaintiffs*,

**v.**                                  **Case No.  3:06-cv-0225**
                                              **Judge Thomas M. Rose**

**Rexam Beverage Can Company,**

        *Defendant*.

---

**ENTRY AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND FOR A MORE DEFINITE STATEMENT** (DOC. 12). **THE COURT GRANTS REXAM'S MOTION TO DISMISS IP TECHNOLOGIES WITH RESPECT TO THE BREACH OF CONTRACT CLAIM (COUNT II) FOR LACK OF STANDING. THE COURT GRANTS REXAM'S MOTION TO DISMISS WILLIAMSON FOR LACK OF STANDING WITH RESPECT TO THE MISAPPROPRIATION OF TRADE SECRETS (COUNT I), VIOLATION OF THE LANHAM ACT (COUNT III) AND TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AND BUSINESS RELATIONS (COUNT IV) CLAIMS. THE COURT GRANTS THE MOTION TO DISMISS COUNT III OF THE COMPLAINT, THE LANHAM ACT CLAIMS, WITHOUT PREJUDICE AND GRANTS REXAM'S MOTION FOR A MORE DEFINITE STATEMENT.  THE COURT DENIES REXAM'S MOTION TO DISMISS COUNT IV OF PLAINTIFFS' COMPLAINT, THE TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC AND BUSINESS RELATIONS CLAIM.  THE COURT GRANTS REXAM'S MOTION FOR A MORE DEFINITE STATEMENT WITH RESPECT TO THE BREACH OF CONTRACT CLAIM (COUNT 2), BUT DENIES THE MOTION WITH REGARD TO THE MISAPPROPRIATION OF TRADE SECRETS CLAIM (COUNT 1 OF THE COMPLAINT).  PLAINTIFF IS ORDERED TO FILE AN AMENDED COMPLAINT ADDRESSING THE MATTERS RULED UPON IN THIS ORDER BY JUNE 22, 2007.**

---

Before the Court is Defendant Rexam Beverage Can Company's ("Rexam") Motion to

Dismiss and for a More Definitive Statement. Doc. 12. Therein, Rexam asserts that the Complaint in this case should be dismissed for lack of subject matter jurisdiction and failure to state a claim, as required by Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiffs are James T. Williamson ("Williamson") and IP Technologies Holdings, LLC ("IP Technologies"). Count I alleges Misappropriation of Trade Secrets with regard to Proprietary Ultrasonic Technology allegedly owned by Plaintiffs. Count II alleges breach of a Confidentiality and Non-Disclosure Agreement. Count III alleges Violation of the Lanham Act, 15 U.S.C. § 1125(a). Count IV alleges Tortious Interference with Prospective Economic Advantage and Business Relations.

Rexam challenges Williamson's standing to bring the breach of contract claim and IP Technologies's standing to bring the Misappropriation of Trade Secrets, Lanham Act and Tortious Interference claims. Rexam also moves to dismiss both the Lanham Act and Tortious Interference actions on grounds that Plaintiffs have failed to state a claim upon which relief can be granted regarding these claims. With respect to any claims which survive the motion to dismiss, Rexam moves the Court to order Plaintiffs to file a more definitive statement pursuant to Federal Rule of Civil Procedure 12(e) as to the Misappropriation of Trade Secrets, Breach of Contract and Lanham Act claims.

## I.    Factual Background

In light of the procedural posture of the instant action, the Court will accept as true all facts alleged in the Complaint. The Complaint alleges that Williamson is the President, Manager and a part-owner of IP Technologies. Doc. 1 ¶ 11. IP Technologies develops, promotes and licenses certain technology developed by Williamson. *Id.* Williamson is the

inventor of a unique and highly valuable process for welding metal seams using ultrasonic welding technology ("Proprietary Ultrasonic Technology"). *Id.* ¶ 16. Williamson and IP Technologies expended substantial sums of money in the research, development, design and documentation of the Proprietary Ultrasonic Technology. *Id.* ¶ 30. Williamson has never publicly disclosed the Proprietary Ultrasonic Technology and has maintained its confidentiality at all times. The Proprietary Ultrasonic Technology derives independent economic value from not being generally known. *Id.* at 17, 32, 34. Williamson and IP Technologies have a reasonable probability of future business relationships with potential users, licensees, or purchasers of the Proprietary Ultrasonic Technology. *Id.* ¶ 56.

Rexam is the U.S. arm of the largest beverage can maker in the world, producing more than 50 billion cans per year with annual sales of approximately $5.9 billion. *Id.* ¶ 12. In 2004, Rexam and Williamson commenced discussions regarding certain metal seaming technology developed by Williamson. *Id.* ¶13. Williamson and Rexam signed a Confidentiality and Non-Disclosure Agreement on or about October 12, 2004 to protect the confidentiality of the information shared during such discussions. *Id.* ¶ 14. The Non-Disclosure Agreement requires that all proprietary information disclosed pursuant to the agreement "shall be held in confidence by the receiving party, shall not be used other than for the purpose of negotiating the proposed transaction, and shall not be disclosed to any third party without the prior approval of the disclosing party." *Id.* ¶ 15. On or about September 28, 2005, Williamson disclosed the Proprietary Ultrasonic Technology to Rexam as a result of the position of trust and confidence which Rexam had with Williamson and IP Technologies. *Id.* ¶ 18, 35.

On December 20, 2005, almost three months after the technology was disclosed,

3

Williamson filed two United States Patent Applications directed to the Proprietary Ultrasonic Technology. *Id.* ¶ 19. On the same day these patent applications were assigned by Williamson to IP Technologies. *Id.* Williamson informed Rexam of the two patent applications the day before they were filed, on December 19, 2005. *Id.* ¶ 20. On January 16, 2006, Rexam informed Williamson that it wished to pursue the Proprietary Ultrasonic Technology and sought to negotiate an agreement with IP Technologies that would give Rexam limited rights to the technology. *Id.* ¶ 21. Rexam and IP Technologies never reached an agreement regarding the Proprietary Ultrasonic Technology and all rights to the technology remain with IP Technologies and no rights were ever granted to Rexam. *Id.* ¶ 22.

On February 16, 2006, Rexam filed its own patent application disclosing and claiming as its own the Proprietary Ultrasonic Technology. *Id.* ¶ 23. Rexam did not name Williamson as the inventor of the Proprietary Ultrasonic Technology nor did it inform Williamson or IP Technologies that it was going to file a patent application. *Id.* ¶ 24. Rexam has disclosed to the marketplace that it created and owns the intellectual property associated with the Proprietary Ultrasonic Technology. *Id.* ¶ 49.

When Williamson learned that Rexam had filed a patent directed to his Proprietary Ultrasonic Technology, Williamson immediately contacted Rexam and requested that it correct the ownership and inventorship of the technology disclosed and claimed in its patent application. *Id.* ¶¶ 25-26. Rexam has refused to comply with such repeated requests. *Id.* ¶ 26. The Complaint alleges that Rexam's patent application would be published by the patent office on or about August 16, 2006.[1] *Id.* ¶ 27. Williamson and IP Technologies had no practical means of

---

[1] The complaint has not been amended to reflect that such publication actually did occur.

stopping such publication.  *Id.*

## II.      Analysis

Rexam makes its Motion to Dismiss on two grounds: first it seeks to dismiss each of the

Plaintiffs for lack of standing on certain claims, and second it seeks to dismiss certain claims for

failure to state a claim upon which relief can be granted.  Since the challenge to Plaintiffs'

standing relates to the Court's jurisdiction, it must be considered first.  *Sault Ste. Marie Tribe of*

*Chippewa Indians v. United States*, 9 F. App'x. 457, 460 (6th Cir. 2001) (citing *Steel Co. v.*

*Citizens for a Better Env't*, 523 U.S. 83 (1998)).

## A.      Standing - Standard of Review

A motion to dismiss for lack of standing is properly analyzed under Rule 12(b)(1) since

"standing is thought of as a 'jurisdictional' matter, and a plaintiff's lack of standing is said to

deprive a court of jurisdiction." *Ward v. Alternative Health Delivery Sys., Inc.*, 261 F.3d 624,

626 (6th Cir. 2001).  "[F]ederal Courts, being courts of limited jurisdiction, must examine their

subject-matter jurisdiction throughout the pendency of *every* matter before them."  *Children's*

*Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1419 (6th Cir. 1996) (citations omitted;

emphasis in original). In reviewing a Rule 12(b)(1) motion, the plaintiff has the burden of

proving jurisdiction to survive the motion and the Court has the power to resolve factual

disputes.  *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986).  "The established

rule is that a plaintiff, suing in federal court, must show in his pleading, affirmatively and

distinctly, the existence of whatever is essential to federal jurisdiction, and, if he does not do so,

the court, on having the defect called to its attention or on discovering the same, must dismiss

the case, unless the defect be corrected by amendment."  *Smith v. McCullough*, 270 U.S. 456,

5

459 (1926).  Allegations which are the essence of jurisdiction are essential and can neither be

overlooked nor supplied by inference.  *Dodrill v. New York Central Railroad Co.,* 253 F. Supp.

564, 567 (S.D. Ohio 1966).

Article III of the Constitution limits the federal court jurisdiction to "Cases" and

"Controversies":

> thereby entailing as an "irreducible minimum" that there be (1) an injury in fact,
> (2) a causal relationship between the injury and the challenged conduct, and (3) a
> likelihood that the injury will be redressed by a favorable decision.  *See, e.g.,
> Northeastern Fla. Chapter, Associated Gen. Contractors of Am. v. Jacksonville*,
> 508 U.S. 656, 663 (1993); *Valley Forge Christian Coll. v. Am. United for
> Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982).  Supplementing
> these constitutional requirements, the prudential doctrine of standing has come to
> encompass "several judicially self-imposed limits on the exercise of federal
> jurisdiction." *See Allen v. Wright*, 468 U.S. 737, 751 (1984); *see also Flast v.
> Cohen*, 392 U.S. 83, 97 (1968).

*United Food and Commercial Workers Union, Local 751 v. Brown Group, Inc.*, 517 U.S. 544,

551 (1996).

## 1.     IP Technologies' Standing

Rexam's Motion to Dismiss asserts that IP Technologies lacks standing to bring the

breach of contract claim contained in Count II of the Complaint because IP Technologies was

not a party to the Non-Disclosure Agreement, which is the contract on which the claim is based.

Doc. 12 at 4.  Williamson and Rexam are the only two parties to the Non-Disclosure Agreement.

Doc. 1, Ex. 1.  Rexam concedes that Williamson has standing to assert a breach of contract

claim.  Doc. 12 at 4.  Although IP Technologies is not a party to the contract, Plaintiffs allege

that Rexam is "in violation of [its] . . . contractual obligations to . .[IP Technologies]."  Doc. 1 ¶

44.  Plaintiffs advance three different theories on which IP Technologies has standing to sue for

breach of contract.  Doc. 15 at 4-6.  First, they allege that Rexam should be judicially estopped

from arguing that IP Technologies should not be treated as a party to the Non-Disclosure Agreement. *Id.* at 4. Second, they allege that IP Technologies succeeded Williamson to the Non-Disclosure Agreement when it acquired the Proprietary Ultrasonic Technology from Williamson. *Id.* at 5. Third, they allege that even if IP Technologies is an assignee of the Non-Disclosure Agreement, Williamson complied with the assignment provision of the Non-Disclosure Agreement. *Id.* at 4-5.

Plaintiffs argue that Rexam should be judicially estopped[2] from arguing that IP Technologies is not a party to the Non-Disclosure Agreement based on prior acquiescence or waiver. *Id.* at 4. Rexam and IP Technologies signed a Joint Development Agreement on June 14, 2005, directed to a type of metal seaming technology not at issue in this litigation, which contains a confidentiality clause that incorporates the Non-Disclosure Agreement. The clause states that the Non-Disclosure Agreement *between the parties* shall cover confidential information disclosed under the Joint Development Agreement. Doc. 15 at 5 (citing Exhibit 1-A at p.7, ¶ 5.0). Plaintiffs argue that because Williamson was not a party to the Joint Development Agreement, reference to "the parties" in this clause confirms that everyone considered IP Technologies to be a party to the Non-Disclosure Agreement. However, even if this incorporation by reference did manifest an intent by Rexam to consent to Williamson assigning the Non-Disclosure Agreement to IP Technologies, making IP Technologies a party to the Non-Disclosure Agreement, or an intent to amend the Non-Disclosure Agreement, the explicit terms

---

[2]"Judicial estoppel forbids a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in an earlier proceeding." Doc. 17 at 5 (citing *Pennycuff v. Fentress County Bd. of Educ.*, 404 F.2d 447, 452-53 (6th Cir. 2005)). The position allegedly taken by Rexam in the Joint Development Agreement, is not considered one taken in an earlier proceeding, making the judicial estoppel argument inapplicable.

of the Non-Disclosure Agreement permit assignments and changes only in writings signed by the

parties to the Non-Disclosure Agreement itself. The Joint Development Agreement was not

signed by Williamson who is a party to the Non-Disclosure Agreement, and who's signature is

thus required.

The Non-Disclosure Agreement contains the following assignment provision relevant to

Plaintiff's claim that IP Technologies succeeded Williamson to the contract:

> This Agreement shall not be assignable by any of the parties hereto without the
> written consent of the other parties. Nothing contained in this agreement, express
> or implied, is intended to confer upon any person or entity, other than the parties
> hereto and their permitted successors, assigns, and transferees any rights or
> remedies under or by reason of this Agreement. Doc. 1, Ex. 1 ¶ 9(g).

Rexam argues that this provision precludes IP Technologies from having any rights under the

Non-Disclosure Agreement. Doc. 12 at 4. Plaintiffs, on the other hand, argue that when

Williamson assigned the Proprietary Ultrasonic Technology to IP Technologies, IP Technologies

became Williamson's successor to the Non-Disclosure Agreement. Doc. 15 at 5. Plaintiffs

further allege that the Non-Disclosure Agreement distinguishes between successors and assigns

and requires written consent for assignment only. *Id.* A plain reading of the contract indicates

that the word "permitted" contained in the assignment provision modifies successors, assigns,

*and* transferees, not just assigns. So, even if IP Technologies is Williamson's successor to the

Non-Disclosure Agreement, Rexam's written consent was required in order for IP Technologies

to acquire any rights or remedies under the Non-Disclosure Agreement.

Plaintiffs' last argument regarding IP Technologies's standing to bring a breach of

contract claim states that even if Williamson did assign the Non-Disclosure Agreement to IP

Technologies, the assignment provision was complied with and it was a valid assignment under

8

the Agreement. Plaintiffs argue that the Joint Development Agreement contains Rexam's written

consent to Williamson's assignment of the Non-Disclosure Agreement to IP Technologies

because the Non-Disclosure Agreement is incorporated by reference into the Joint Development

Agreement.  Doc. 15 at 5.  Again, both parties to the Non-Disclosure Agreement are required to

give written consent of an assignment and, because Williamson is not a party to the Joint

Development Agreement (even though he is a party to the Non-Disclosure Agreement), his

written consent was required, but not given.  So, there was no valid assignment from Williamson

to IP Technologies of the Non-Disclosure Agreement.[3]  "It is axiomatic that only a party or

intended third party beneficiary has standing to bring an action on contract." Doc. 17 at 3

(quoting *Thompson v. City of Columbus*, 2001 WL 1681129, *4 (S.D. Ohio Sept. 26, 2001).

Plaintiffs do not argue that IP Technologies was an unintended third party beneficiary and their

arguments that IP Technologies was a party by virtue of being Williamson's successor or

Williamson's assignee fail for the reasons set forth above.  Therefore, Rexam's Motion to

Dismiss IP Technologies with respect to the Breach of Contract claim (Count II) is granted.

**2.      Williamson's Standing**

Rexam's Motion to Dismiss also asserts that Williamson lacks standing to bring the

Misappropriation of Trade Secrets, Violation of the Lanham Act and Tortious Interference with

Prospective Economic Advantage and Business Relations claims.  Williamson assigned the

---

[3]If the Court found that there was an assignment from Williamson to IP Technologies, then Williamson would no longer have standing to assert the breach of contract claim against Rexam, because he would not be a party with rights under the Non-Disclosure Agreement.  The assignor's rights with regard to everything that was assigned are extinguished upon assignment. Doc. 17 at 5 (citing *Amboy Nat'l Bank v. Generali-U.S. Branch*, 930 F. Supp 1053, 1059 (D.N.J. 1996).

patent applications directed to his Proprietary Ultrasonic Technology to IP Technologies on December 20, 2005. Doc. 1 ¶ 19. In *Moore v. Marsh*, 74 U.S. 515, 522 (1868), the Supreme Court held that in a patent infringement case, "the right of action is given to the person or persons owning the exclusive right at the time the infringement is committed." Thus, Williamson has the right to recover damages for injuries occurring prior to December 20, 2005 and IP Technologies has the right to recover damages for injuries occurring after December 20, 2005. The Complaint fails to make any affirmative and distinct allegations of injuries that occurred prior to December 20, 2005.

On February 16, 2006, Rexam filed its patent application and made the alleged improper disclosure that is the apparent basis for all three of these claims. *Id.* ¶ 23. The only possible allegation of injury occurring before December 20, 2005 is contained in paragraph 49 of the Complaint, wherein Plaintiffs allege that, "Rexam represented to the marketplace in a false and misleading way that it created and owns the intellectual property associated with the Proprietary Ultrasonic Technology." However, it is not clear whether this representation to the marketplace was a result of the patent application or a separate misrepresentation[4], and if it was a separate misrepresentation, there is no allegation that it occurred before December 20, 2005.[5] This allegation is not sufficiently affirmative and distinctive to satisfy Plaintiffs' burden to prove the existence of jurisdiction. *See Rogers*, 798 F.2d at 915; *Smith*, 270 U.S. at 459. Accordingly, the

---

[4]Plaintiffs indicate that these representations to the marketplace occurred as a result of the patent application in its reply brief. Doc. 15 at 6.

[5]In addition, plaintiffs cede that Williamson doesn't have standing for injuries occurring after December 20, 2005, but fail to identify any injury, including these "representations to the marketplace," that occurred before December 20, 2005. Doc. 15 at 2-3.

Court grants Rexam's Motion to Dismiss Williamson with respect to the Misappropriation of Trade Secrets (Count I), Violation of the Lanham Act (Count III) and Tortious Interference with Prospective Economic Advantage and Business Relations (Count IV) claims. However, if discovery reveals injuries occurring prior to December 20, 2005, when Williamson assigned the patent applications to IP Technologies, Plaintiffs are free to amend their Complaint.

**B.      Failure to State a Claim - Standard of Review**

Motion to dismiss for failure to state a claim upon which relief can be granted are reviewed pursuant to Federal Rule of Civil Procedure 12(b)(6). When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 515 (1972). Although the court must liberally construe the complaint in favor of the party opposing the motion to dismiss, *Kugler v. Helfant*, 421 U.S. 117, 126-26 n.5 (1975), it will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *Blackburn v. Fisk Univ.*, 443 F.2d 121, 124 (6th Cir.1971); *Sexton v. Barry*, 233 F.2d 220, 223 (6th Cir. 1956). The Court will, however, indulge all reasonable inferences that might be drawn from the pleadings. *Fitzke v. Shappell*, 468 F.2d 1072, 1076-77 n.6 (6th Cir. 1972).

The Court is mindful that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also McLain v. Real Estate Bd.*, 444 U.S. 232, 246 (1980); *Windsor v. The Tennessean* F.2d 155, 158

(6th Cir. 1983). Because a motion under Rule 12(b)(6) is directed solely to the complaint itself[6], *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir.1983); *Sims v. Mercy Hosp.*, 451 F.2d 171, 173 (6th Cir. 1971), the focus is whether the plaintiff is entitled to offer evidence to support the claims, rather than on whether the plaintiff will ultimately prevail. *Scheuer*, 416 U.S. at 236; *McDaniel v. Rhodes*, 512 F. Supp 117, 120 (S.D. Ohio 1981).

A complaint need not set down in detail all the particularities of a plaintiff's claim against a defendant. *United States v. School District of Ferndale*, 577 F.2d 1339, 1345 (6th Cir. 1978). Federal Rule of Civil Procedure 8 requires only a "short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, a complaint must afford the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Dunn v. Tennessee,* 697 F.2d 121, 125 (6th Cir. 1982); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976). Thus, this Court will grant a motion for dismissal under Rule 12(b)(6) if there is an absence of law to support a claim of the type alleged, if the facts alleged are insufficient to make a valid claim, or if on the face of the complaint there is an unsurmountable bar to relief indicating that the plaintiff does not have a claim. *See Rauch v. Day & Night Mfg.*, 576 F.2d 697, 702 (6th Cir. 1978); *Brennan v. Rhodes*, 423 F.2d 706 (6th Cir. 1970).

1.    **Motion to Dismiss Lanham Act Claims**

Plaintiffs' complaint alleges that:

49. Rexam has represented to the marketplace in a false and misleading way that it created and owns the intellectual property associated with the Proprietary Ultrasonic Technology.

---

[6]The Court will also consider the Non-Disclosure Agreement, which was an exhibit attached to the complaint. *See Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).

50.  Rexam's actions have a tendency to deceive and create confusion in a substantial portion of the intended audience in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1).

51.  The confusion in the intended audience is likely to influence investment or purchasing decisions.

52.  Rexam's misrepresentations affect or likely will affect commerce.

53.  There is injury or likelihood of injury to Williamson and [IP Technologies] in terms of their loss of clearly understood title to their intellectual property and a resulting loss to the value thereof, including a loss of goodwill.

Doc. 1 ¶¶ 49-53.


Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1) states that:

   (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

        (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

        (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Lanham Act § 43(a); 15 U.S.C. § 1125(a)(1).

Congress has recognized that § 43(a)(1) "has been widely interpreted as creating, in essence, a federal law of unfair competition." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, n.18, (quoting S. Rep. No. 100-515, p. 40 (1988)). Within this unfair competition law there are two different claims that can be brought.  Plaintiffs do not identify, in their complaint,

whether they are alleging that Rexam's misrepresentations violated subparagraph (A), the false association prong, or subparagraph (B), the false advertising prong, of the Lanham Act.[7]

Although Rule 8(a) generally governs pleading requirements, Federal Rule of Civil Procedure 9(b), which states that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). The federal courts are currently divided as to whether Rule 9(b) should apply to a Lanham Act claim. *See Barr Lab., Inc. v. Quantum Pharmics, Inc.*, 827 F. Supp. 111, 117-118 (E.D.N.Y. 1993) (listing cases where federal courts have 1) applied Rule 9(b) to Lanham Act claims and 2) refused to apply Rule 9(b) to Lanham Act claims). The Sixth Circuit has yet to decide this question. *Federal Express Corp. v. United States Postal Serv.*, 40 F. Supp. 2d 943, 950 (D. Tenn. 1999).

However, even if Rule 9(b) does not apply to Lanham Act claims, a plaintiff should plead the nature of alleged misrepresentations with some degree of particularity. Thus, even if Rule 9(b) is not applicable, Plaintiffs are required to state generally the content of the alleged misrepresentations. See *Barr Laboratories, Inc. v. Quantum Pharmics, Inc.*, 827 F. Supp. 111, 117-18 (E.D.N.Y. 1993), and *Max Daetwyler Corp. v. Input Graphics, Inc.,* 608 F. Supp. 1549, 1556 (E.D. Pa. 1985).

The Complaint does not afford Rexam fair notice of Plaintiffs' claim and the grounds upon which it rests. It does not indicate even approximately when or how Rexam allegedly made misrepresentations to the marketplace or even under which prong of 15 U.S.C. §

---

[7] In their Reply, Plaintiffs indicate that they are not pursuing a false advertising claim under the Lanham Act. Doc. 15 at 7.

1125(a)(1) they are proceeding.

However, because it does not appear beyond doubt that Plaintiffs can prove no set of facts in support of their claim which would entitle them to relief, the Court will grant Rexam's Motion to Dismiss without prejudice. The Court will require Plaintiffs to file a more definite statement in compliance with Federal Rule of Civil Procedure 12(e)[8] which provides for a plaintiff to provide a more definite statement where the pleading is "so vague and ambiguous a responsive pleading cannot be framed." *Baxter v. Rose*, 305 F.3d 486, 490 (6th Cir. 2002). Therefore, the Court dismisses Count III of the Complaint, the Lanham Act claims without prejudice and grants Rexam's Motion for a More Definite Statement in compliance with Rule 12(e).[9]

## 2.  Tortious Interference Claims

The tort of interference with business relationships generally occurs when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another. *Lambert v. Kazinetz*, 250 F. Supp. 2d 908, 917 (S.D. Ohio 2003) (applying Ohio law; citing *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 651 N.E.2d 1283, 1294 (Ohio 1995). Plaintiffs allege that they have a "reasonable probability of future business relationships," that Rexam was aware of these

---

[8]"If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Fed R. Civ. P. 12(e).

[9]"When granting a motion to dismiss, a court is generally required to grant a plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

15

future business relationships, and that in causing its patent application to be published, Rexam intentionally interfered with these relationships.  Doc. 1 ¶¶ 56-58.   Rexam argues that Plaintiffs fail to identify either an actual or identifiable prospective business relationship, and that a business relationship is an essential element of the tort.  However, under *Lambert* the tort is committed when a person causes a third party *not to enter into* a business relationship with another.  Thus, the existence of a present business relationship is not an essential element of the tort and Plaintiffs' Complaint does not violate Rule 8 for failing to allege interference with any present business relationships.

Plaintiffs argue that as a result of Rexam's patent application, Rexam interfered with Plaintiffs' future business relationships with potential users, licensees or purchasers of the Proprietary Ultrasonic Technology.  Doc. 1 ¶¶ 56-58.  In *Lambert*, the court denied defendants' motion to dismiss a tortious interference claim because plaintiffs plead sufficient facts to state a claim when they identified some specific potential and current third parties with whom they had or could have had business relationships. *See* 250 F. Supp. 2d at 917-18.

While Plaintiffs have failed to allege any specific potential users, licensees or purchasers of the Proprietary Ultrasonic Technology, the standard governing this pleading requires only a "short plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  It does not require the plaintiff to set down in detail all the particularities of its claim. *School District of Ferndale*, 577 F.2d at 1345.  The Complaint identifies the misrepresentations via the patent application as the alleged conduct Rexam engaged in to "induce or purposely cause third person[s] not to enter into . . . a business relation with [Plaintiffs]." *Lambert*, 250 F. Supp. 2d at 917; Doc. 1 ¶ 58.   It also identifies the third persons as potential users, licensees or

16

purchasers of the Proprietary Ultrasonic Technology.  Doc. 1 ¶ 56.  Therefore, the Complaint affords Rexam fair notice of Plaintiffs' claim and the grounds upon which it rests and it does not appear beyond doubt that Plaintiffs can prove no set of facts in support of their claim which would entitle them to relief.  Thus, the Court denies Rexam's Motion to Dismiss Count IV of Plaintiffs' Complaint, the tortious interference with prospective economic and business relations claim.

**C.       More Definite Statement**

Rexam moves the Court to order Plaintiffs to serve a more definite statement pursuant to Rule 12(e) as to the claims for Misappropriation of Trade Secrets (Count I) and Breach of Contract (Count II) to the extent that such claims survive its Motion to Dismiss.[10]  Because only one of the two Plaintiffs was dismissed with respect to both the Misappropriation of Trade Secrets and Breach of Contract claims, these claims survive the Motion to Dismiss and the Motion for a More Definite Statement must be addressed.  The Misappropriation of Trade Secrets claim survives the Motion to Dismiss as to Plaintiff IP Technologies and the Breach of Contract claim survives the Motion to Dismiss as to Plaintiff Williamson.

Rule 12(e) provides that, "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading."  Fed. R. Civ. P. 12(e); *see also Sky Tech. Partners, LLC v. Midwest Research Inst.*, 125 F. Supp. 2d 286, 298 (S.D. Ohio 2000).  Rexam alleges that the trade secret is not defined

---

[10]The Court addressed Rexam's Motion for a More Definite Statement as to the Lanham Act claim above where it addressed the Motion to Dismiss such claim.

with sufficient particularity and that pursuant to the Non-Disclosure Agreement the parties exchanged various information and that Rexam cannot reasonably be expected to form a responsive pleading without knowing with more specificity what it allegedly misappropriated and disclosed.

The Complaint defines "Proprietary Ultrasonic Technology as "a unique and highly valuable process for welding metal seams using ultrasonic welding technology." Doc. 1 ¶ 16.  It also indicates the date on which the Proprietary Ultrasonic Technology was disclosed by Williamson to Rexam as on or about September 28, 2005. *Id.* ¶ 18.  Additionally it identifies the Proprietary Ultrasonic Technology as the ultrasonic technology that Rexam informed Williamson that it wished to pursue on January 10, 2006 and that Rexam disclosed in its February 16, 2006 patent application. *Id.* ¶¶ 21, 23, 36.  Therefore, the Court concludes that the Proprietary Ultrasonic Technology is defined with sufficient particularity.

With respect to the Misappropriation of Trade Secrets claim (Count 1 of the Complaint) Plaintiffs identify the exact conduct in which Rexam allegedly engaged in order to have misappropriated trade secrets, i.e. the Proprietary Ultrasonic Technology.  Plaintiffs allege that Rexam disclosed the Proprietary Ultrasonic Technology in its patent application. *Id.* ¶ 36.  Because the Complaint identifies both the trade secret at issue and the exact conduct in which Rexam engaged in order to misappropriate such trade secret, the Misappropriation of Trade Secrets, Count 1 of the Complaint, meets the requirements of Rule 8 and the Motion for a More Definite Statement is denied.

With respect to the Breach of Contract claim (Count 2 of the Complaint) Plaintiffs fail to identify when or what conduct Rexam engaged in by which it disclosed the Proprietary

18

Ultrasonic Technology in breach of the Non-Disclosure Agreement. Plaintiffs merely allege that, "Rexam disclosed, utilized, and continues to utilize the Proprietary Ultrasonic Technology . . . [and that] Rexam has disclosed Proprietary Ultrasonic Technology to individuals or entities outside its own organization in violation of Rexam's contractual obligations to Williamson and [IP Technologies]." *Id.* ¶¶ 43-44.

While not subject to the strict pleading requirements of Rule 9(b), the fair notice of Rule 8 still requires some allegation of time or date or place or specific persons involved in a tort. See *Nance v. East Baton Rouge Parish Prison*, 2006 WL 1098168, *3 (D.N.J. 2006). Because Plaintiffs fail to identify when or how Rexam disclosed the Proprietary Ultrasonic, the Breach of Contract claim does not give Rexam fair notice of the Plaintiffs' claim or the ground upon which it rests and therefore does not meet the requirements of Rule 8. Therefore, the Court will grant Rexam's Motion for a More Definite Statement with respect to the Breach of Contract claim (Count 2).

## III.  Conclusion

Because Rexam is not judicially estopped from arguing that IP Technologies should not be treated as a party to the Non-Disclosure Agreement, and because IP Technologies did not succeed Williamson to the Non-Disclosure Agreement when it acquired the Proprietary Ultrasonic Technology from Williamson, and because IP Technologies is not an assignee of the Non-Disclosure Agreement, Rexam's Motion to Dismiss IP Technologies with respect to the Breach of Contract claim (Count II) for lack of standing is **GRANTED**.

Because there is no allegation of injury occurring before December 20, 2005, the Court

**GRANTS** Rexam's Motion to Dismiss Williamson for lack of standing with respect to the Misappropriation of Trade Secrets (Count I), Violation of the Lanham Act (Count III) and Tortious Interference with Prospective Economic Advantage and Business Relations (Count IV) claims.

Because the Complaint does not afford Rexam fair notice of Plaintiffs' claim and the grounds upon which it rests, the Court **GRANTS** the motion to dismiss Count III of the Complaint, the Lanham Act claims, without prejudice and grants Rexam's Motion for a More Definite Statement, ordering Plaintiff to file an amended complaint within 30 days.

Because the Complaint affords Rexam fair notice of Plaintiffs' claim and the grounds upon which it rests and it does not appear beyond doubt that Plaintiffs can prove no set of facts in support of their claim which would entitle them to relief, the Court **DENIES** Rexam's Motion to Dismiss Count IV of Plaintiffs' Complaint, the tortious interference with prospective economic and business relations claim.

With respect to the Misappropriation of Trade Secrets claim (Count 1 of the Complaint), because the Complaint identifies both the trade secret at issue and the exact conduct in which Rexam engaged in order to misappropriate such trade secret, the Misappropriation of Trade Secrets, Count 1 of the Complaint, meets the requirements of Rule 8 and the Motion for a More Definite Statement is **DENIED**.

With respect to the Breach of Contract claim (Count 2 of the Complaint), because Plaintiffs fail to identify when or how Rexam disclosed the Proprietary Ultrasonic, the Breach of Contract claim does not give Rexam fair notice of the Plaintiffs' claim or the ground upon which

20

it rests and therefore does not meet the requirements of Rule 8, the Court **GRANT** Rexam's

Motion for a More Definite Statement with respect to the Breach of Contract claim (Count 2).[11]

      **DONE** and **ORDERED** in Dayton, Ohio, this Monday, June 18, 2007.


                                           s/Thomas M. Rose

                                 _____

                                       THOMAS M. ROSE
                                UNITED STATES DISTRICT JUDGE

---

[11]The Court acknowledges the valuable contribution and assistance of judicial intern Jacklyn D. Knuckles in drafting this opinion.

21